IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

_____

JOANN EDWARDS on behalf of    )
S.E., a Minor,                )
                              )
     Plaintiff,               )
                              )         12-cv-1088-JDB-tmp
v.                            )
                              )
COMMISSIONER OF SOCIAL        )
SECURITY,                     )
                              )
     Defendant.               )

_____

### REPORT AND RECOMMENDATION

_____

Before the court by order of reference dated February 1, 2017, (ECF No. 16) is plaintiff Joann Edwards's appeal from a final decision of the Commissioner of Social Security ("Commissioner") denying her application on behalf of S.E., a minor, for supplemental security income under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 401 *et seq.* For the reasons below, it is recommended that the decision of the Commissioner be affirmed.

### I.  PROPOSED FINDINGS OF FACT

On January 22, 2008, Edwards applied for supplemental security income on behalf of S.E. under Title XVI of the Act.  (R. 19.) Edwards alleged a disability onset date for S.E. of December 1, 2007.  (R. 108.)  The application was denied initially, and upon reconsideration by the Social Security Administration ("SSA"). (R.

52-53.)   At Edwards's request, a hearing was held before an Administrative Law Judge ("ALJ") on April 2, 2010.  (R. 37-51.)  On May 11, 2010, the ALJ issued a decision denying Edwards's request for benefits on behalf of S.E.  The ALJ found that while S.E. suffers from the severe impairment of ADHD, she is not disabled because her impairment does not meet, medically equal, or functionally equal any of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1 ("the listings").  (R. 19-32.)  On February 1, 2012, the SSA's Appeals Council denied Edwards's request for review.  (R. 1-3.)  Therefore, the ALJ's decision became the final decision of the Commissioner.  (Id.)

On April 6, 2012, Edwards filed the instant action.  (ECF No. 2.)  Edwards argues that the ALJ erred in finding that S.E.'s impairment did not meet Listing 112.11, failed to properly consider and weigh the opinion evidence, and failed to properly consider Edwards's hearing testimony.  Edwards also contends the ALJ's decision is not supported by substantial evidence.  Finally, Edwards asks the court to consider evidence that was before the Appeals Council but not in the record before the ALJ in reviewing the unfavorable decision, or alternatively, to remand to the SSA on the grounds that the evidence at issue is new and material within the meaning of sentence six of 42 U.S.C. § 405(g).

## II.   PROPOSED CONCLUSIONS OF LAW

### A.   Standard of Review

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he or she was a party.  "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  Judicial review of the Commissioner's decision is limited to whether there is substantial evidence to support the decision and whether the Commissioner used the proper legal criteria in making the decision. Id.; Winn v. Comm'r of Soc. Sec., 615 F. App'x 315, 320 (6th Cir. 2015); Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011); Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is more than a scintilla of evidence but less than preponderance, and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).

In determining whether substantial evidence exists, the reviewing court must examine the evidence in the record as a whole and "must 'take into account whatever in the record fairly detracts from its weight.'" Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990) (quoting Garner v. Heckler, 745 F.2d 383, 388 (6th Cir.

1984)).   If substantial evidence is found to support the Commissioner's decision, however, the court must affirm that decision and "may not even inquire whether the record could support a decision the other way." Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994) (quoting Smith v. Sec'y of Health & Human Servs., 893 F.2d 106, 108 (6th Cir. 1989)).   Similarly, the court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility.   Ulman v. Comm'r of Soc. Sec., 693 F.3d 709, 713 (6th Cir. 2012) (citing Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007)).   The Commissioner, not the court, is charged with the duty to weigh the evidence, to make credibility determinations, and to resolve material conflicts in the testimony. Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 528 (6th Cir. 1997); Crum v. Sullivan, 921 F.2d 642, 644 (6th Cir. 1990); Kiner v. Colvin, No. 12-2254-JDT, 2015 WL 1295675, at *1 (W.D. Tenn. Mar. 23, 2015).

## B.   The Three-Step Analysis

Under 42 U.S.C. § 1382c(a)(3)(C):

> An individual under the age of 18 shall be considered disabled for the purposes of this title if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

§ 1382c(a)(3)(C)(i).   Under the Act, the claimant bears the ultimate burden of establishing an entitlement to benefits. Oliver v. Comm'r of Soc. Sec., 415 F. App'x 681, 682 (6th Cir. 2011).   The initial burden is on the claimant to prove she has a disability as

defined by the Act.  Siebert v. Comm'r of Soc. Sec., 105 F. App'x 744, 746 (6th Cir. 2004) (citing Walters, 127 F.3d at 529); see also Born v. Sec'y of Health & Human Servs., 923 F.2d 1168, 1173 (6th Cir. 1990).  If the claimant is able to do so, the burden then shifts to the Commissioner to demonstrate otherwise.  Born, 923 F.2d at 1173; see also Griffith v. Comm'r of Soc. Sec., 582 F. App'x 555, 559 (6th Cir. 2014).

Entitlement to social security benefits for a child is determined by a three-step sequential analysis set forth in the Social Security Regulations.  See 20 C.F.R. § 416.924(a).  First, the child must not be engaged in substantial gainful activity.  See 20 C.F.R. § 416.924(b).  Second, the child must have a medically determinable impairment that is severe.  See 20 C.F.R. § 416.924(c).  In the third step, the ALJ determines whether the claimant's impairment or combination of impairments meets, medically equals, or functionally equals the severity of any impairment listed in the listings.  See Millen v. Astrue, No. 213CV02148JPMCGC, 2016 WL 2894927, at *3 (W.D. Tenn. May 18, 2016) (citing Miller ex rel. Devine v. Comm'r of Soc. Sec., 37 F. App'x 146, 148 (6th Cir. 2002)).  If the impairment satisfies the criteria for a listed impairment, the claimant is considered to be disabled. On the other hand, if the claimant's impairment does not meet or equal a listed impairment, the ALJ must find that the child is not disabled.  See 20 C.F.R. § 416.924(d).  A child's functional equivalency is assessed in terms of six domains: "(1) acquiring and

using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being." 20 C.F.R. § 416.926a(b)(1). A child's impairment is considered "functionally equal" to a listed impairment "if the child has an extreme limitation in one area of functioning or a marked limitation in two areas of functioning." Millen, 2016 WL 2894927 at *3 (citing Miller ex rel. Devine, 37 F. App'x at 148); see also 20 C.F.R. §§ 416.926a(b)(2)& 416.926a(a).

## C.    Additional Evidence Before the Appeals Council

As far as the court can tell from the record and briefing, when Edwards appealed the ALJ's unfavorable decision to the Appeals Council, she submitted additional evidence that was not part of the record before the ALJ. Some of these records were included as Exhibit 16F to the record, and others were attached as an exhibit to Edwards's brief in this case.[1]  (R. 397-412; ECF No. 11-1.) This evidence appears to contain records from Quinco Mental Health Center as well as additional school and educational records. Edwards contends that the court should consider the records that were before the Appeals Council (but not before the ALJ) in reviewing the ALJ's decision for substantial evidence. Alternatively, Edwards urges the court to remand to the agency pursuant to sentence six of § 405(g) on the grounds that the

---

[1]It is not clear whether all of the records attached to Edwards's brief were before the Appeals Council.  ECF No. 11-1 appears to contain some records that were part of the record before the ALJ.

evidence is "new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record at a prior proceeding." See § 405(g).

There is a circuit split as to whether a federal court reviewing the final decision of the Commissioner can consider evidence that was before the Appeals Council but not before the ALJ. Edwards cites cases from the Fifth and Ninth Circuits holding that courts must consider such evidence. However, the Sixth Circuit has reached the opposite conclusion. Compare Miller v. Comm'r of Soc. Sec., 811 F.3d 825, 838 (6th Cir. 2016) (quoting Foster v. Halter, 279 F.3d 348, 357 (6th Cir. 2001)) ("[E]vidence submitted to the Appeals Council after the ALJ's decision cannot be considered part of the record for purposes of substantial evidence review.") with Brewes v. Comm'r of Soc. Sec., 682 F.3d 1157, 1163 (9th Cir. 2012) ("[W]hen the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence.") and Higginbotham v. Barnhart, 405 F.3d 332, 336 (5th Cir. 2005) ("[E]vidence submitted for the first time to the Appeals Council is part of the record on appeal because the statute itself provides that such record includes the evidence upon which the findings and decision complained of are based.") (internal citations and quotation marks omitted). Accordingly, the court cannot consider any evidence that was not part of the record

before the ALJ.

As to remand, Edwards has not shown that the additional evidence is material within the meaning of § 405(g). "New evidence is material 'only if there is a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence.'" <u>Miller</u>, 811 F.3d at 839 (quoting <u>Foster</u>, 279 F.3d at 357). Edwards has not shown a reasonable probability of a different outcome if the ALJ had been presented with the records at issue. Accordingly, remand on this basis is not appropriate.

**D.   The ALJ's Step-Three Analysis**

The ALJ found that S.E. was not engaged in substantial gainful activity at step one, and at step two concluded S.E. suffered from the severe impairment of ADHD. At step three, however, the ALJ determined that S.E.'s impairments did not meet, medically equal, or functionally equal the listings. Edwards asserts the ALJ erred in finding that S.E.'s impairments did not meet Listing 112.11 and improperly relying on the opinions of the state agency consultations in making this finding. She further contends that the ALJ failed to properly consider her testimony at the hearing, and that the ALJ's decision is not supported by substantial evidence.

1.   <u>Opinion Evidence</u>

There are four medical opinions in the record: a psychological evaluation by consultative examining psychologist Dr. Dennis Wilson

completed on April 7, 2008 (R. 205-14); two disability evaluation forms completed by nonexamining state agency consultative experts in June and November 2008, respectively (R. 237-24; 300-05); and the report of examining child psychologist Dr. David Pickering (R. 390-96). Dr. Wilson's report included a clinical history, mental status exam, interview with Edwards, and the results of a Wechsler Intelligence Scale for Children and a Wide Range Achievement Test. Dr. Wilson found that S.E.'s performance on the Wechsler Intelligence Scale yielded a Full Scale IQ score equivalency of 86, which placed her in the low-average range of overall intelligence functioning. He measured her Global Assessment of Functioning at 60. He noted that she "requires reminders and prompting to engage in activities of daily living but is able to engage in these without assistance or structure. She sometimes reportedly has inappropriate behaviors that involve attention seeking and not following instructions." (R. 209.) Dr. Wilson diagnosed S.E. with ADHD, predominantly inattentive type, and concluded that she "presents credibly, validly, and consistently, as a child with some problems with attention, concentration, and behavior." (R. 209-10.) He also made the following Functional Assessment of Childhood Age-appropriate Mental Activities:

> A. Age appropriate ability to understand and remember: Mildly limited.

> B. Age-appropriate ability to sustain concentration and age persistence: Moderately limited

> C. Age-appropriate ability to interact with others: Moderately limited.

>    D. Age-appropriate ability to adapt to changes and
>    requirements: Mildly limited.

(R. 210.)

On June 25, 2008, nonexamining state agency consultants Drs. Louise Patikas, Edward Sachs, and Wanda Webb submitted a Childhood Disability Evaluation Form at the initial determination stage.[2] They concluded S.E.'s impairments are severe but do not meet, medically equal, or functionally equal the listings.  As to the six domain factors used to assess functional equivalency, these consultants found that S.E. has "Less Than Marked" limitations in Acquiring and Using Information, Attending and Completing tasks, and Interacting and Relating to Others, and "No Limitation" in Moving About and Manipulating Objects, Caring for Yourself and Health and Physical Well-being.  The consultants considered S.E.'s treatment notes from Pathways of Tennessee, Dr. Wilson's report, and reports from S.E.'s teachers.

On November 12, 2008, nonexamining state agency consultants Drs. Frank Pennington and Larry Welch and Speech Language Pathologist Patricia Allen submitted an additional Childhood Disability Evaluation Form at the reconsideration stage.[3]  These

---

[2]Dr. Patikas is a M.D., while Drs. Sachs and Webb are Ph.Ds.  Dr. Patikas, the consultant with overall responsibility, signed the report on July 13, 2008, while Drs. Sachs and Webb signed as additional consultants on June 25, 2008.

[3]Dr. Pennington is an M.D., Dr. Welch is an Ed.D, and Patricia Allen is an M.S., CCC-SLP.  Dr. Pennington signed the report as the consultant with overall responsibility on November 12, 2008. Dr. Welch and Allen signed as additional consultants on October 21,

consultants also opined that S.E. has a severe impairment that does not meet, medically equal, or functionally equal the listings. As to the six domains of functional equivalency, the consultants found that S.E. has "Less Then Marked" limitations as to Acquiring and Using Information, Attending and Completing Tasks and Interacting and Relating with Others, and "No Limitation" as to Moving About and Manipulating Objects, Caring For Yourself and Health and Physical Well-Being. The consultants stated that they "reviewed all of the evidence in [the] file," and the prior Disability Evaluation "is affirmed as written." (R. 305.)

The final medical opinion in the record is that of Dr. David Pickering, who reviewed S.E.'s records and examined her. In a letter to S.E.'s then-counsel dated October 9, 2009, Dr. Pickering stated

> I have read the entire disability application chart on [S.E.]. In my opinion, the disability that she displays is due to [ADHD], Combined Type, and Bipolar Disorder, Most Recent Episode Depressed, Severe with Psychotic Features. She was initially diagnosed with ADHD prior to starting school, and has been on medication since then. She is currently taking Abilify and Clonadine. Significant problems associated with her diagnosis include aggressive behavior, irritability, mood swings, depression, impulsivity, social interaction and peer relationship problems, and distractibility. Onset of Bipolar Disorder at her age tends to result in severe impairment in most areas of life, and will have a strong negative impact on her development and her functioning in school and in the community. Early onset Bipolar Disorder is frequently associated with negative outcome.

(R. 391.) On a separate evaluation form relating to Listing

_____

2008 and November 10, 2008, respectively.

112.11, Dr. Pickering found that S.E. has marked inattention, impulsiveness, and hyperactivity due to her ADHD, and has marked impairment in age-appropriate cognitive/communicative functioning, extreme impairment in age-appropriate social functioning, None-to-Moderate impairment in age appropriate personal functioning, marked difficulties in maintaining concentration, persistence, or pace, and None-to-Moderate Impairment in age-appropriate motor functioning.  At the bottom of this form Dr. Pickering stated that the combination of ADHD and Bipolar Disorder "results in marked to extreme impairment."  (Id.)  On a separate evaluation form relating to the six domains of functioning and dated March 24, 2010, Dr. Pickering opined that S.E. had moderate impairment in Moving about and Manipulating Objects and Health and Physical Well-Being, marked impairment in Acquiring and Using Information and Caring for Yourself, and extreme impairment in Attending and Completing Tasks, Interacting and Relating with Others.[4]

In making the disability decision the ALJ must "evaluate every medical opinion" in the case record, regardless of its source.[5]

---

[4]Dr. Pickering's letter to Edwards's counsel is dated October 9, 2009.  The date on the form relating to Listing 112.11 is cut off from the page that is in the record.  The form relating to the functional equivalency domains is dated March 24, 2010.  The court cannot tell from the record on which date Dr. Pickering examined S.E.  Edwards does not assert that Dr. Pickering examined S.E. on more than one occasion.

[5]The SSA has recently revised its rules for the evaluation of medical evidence, effective March 27, 2017.  See 82 FR 5844 (January 18, 2017).  The changes to the rules for the evaluation of medical opinions, now codified at 20 C.F.R. § 416.920c, apply to claims filed on or after March 27, 2017.  The rules as codified in

See 20 C.F.R. § 416.927(b) & (c).  The SSA has established a
"presumptive sliding scale of deference to be given to various
types of opinions." Norris v. Comm'r of Soc. Sec., 461 F. App'x
433, 439 (6th Cir. 2012).  "A treating source, accorded the most
deference by the SSA, has not only examined the claimant but also
has an 'ongoing treatment relationship' with her consistent with
accepted medical practice." Smith v. Comm'r of Soc. Sec., 482 F.3d
873, 875 (6th Cir. 2007) (quoting 20 C.F.R. § 404.1502).  The SSA
gives the most deference to opinions from a claimant's treating
sources because treating sources "are likely to be medical
professionals most able to provide a detailed, longitudinal picture
of [the claimant's] medical impairment(s)." Id. (citing 20 C.F.R.
§ 404.1527(c)(2)) (alterations in original).  "A nontreating
source, who physically examines the patient 'but does not have, or
did not have an ongoing treatment relationship with' the patient,
falls next along the continuum." Norris, 461 F. App'x at 439
(quoting Smith, 482 F.3d at 875).  "A nonexamining source, who
provides an opinion based solely on review of the patient's
existing medical records, is afforded the least deference." Id.
(citing Smith, 482 F.3d at 875).  In weighing the medical opinions
the ALJ must "consider factors 'including the length and nature of
the treatment relationship, the evidence that the physician offered
in support of her opinion, how consistent the opinion is with the

_____

§ 416.927 apply to claims filed before March 27, 2017.  Id. at
5867-68.

record as a whole, and whether the physician was practicing in her specialty.'" Id. (quoting Ealy v. Comm'r of Soc. Sec., 594 F.3d 504, 514 (6th Cir. 2010)); see 20 C.F.R. § 916.427(c).

While the ALJ did not explicitly assign weight to Dr. Wilson's opinion, he discussed it in detail and his opinion can be fairly read as finding it credible and giving it great weight. The ALJ also gave great weight to the opinions of the state agency consultants. As to Dr. Pickering, the ALJ stated:

> [a]lthough Dr. Pickering's report bestowed a diagnosis of bipolar disorder and ADHD on the claimant along with marked and extreme limitations, it should be noted that this is inconsistent with other medical evidence of record. The record contains no other diagnosis of bipolar disorder given to the claimant. Also, Dr. Pickering is a non-treating psychiatrist. The undersigned finds his report seems client driven and less credible than the other objective medical exhibits in the record.

(R. 25.) The court reads the ALJ's opinion as assigning little to no weight to Dr. Pickering's report.

Edwards argues that Dr. Pickering is the "most qualified and only independent" examiner, and the ALJ improperly ignored his opinion. She also suggests that the ALJ was required to give good reasons for the weight (or lack thereof) given to Dr. Pickering's opinion. However, the ALJ is only required to give good reasons for not giving controlling weight to the opinion of a treating physician. See 20 C.F.R. § 416.927(c)(2). Edwards does not contend that Dr. Pickering is a treating physician, and the record would not support such a contention. See § 416.927(a)(2) ("Treating source means your own acceptable medical source who

provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you."). Accordingly, the ALJ was free to assign Dr. Pickering's opinion whatever weight he felt appropriate based on the evidence in the record.

While there may be evidence in the record that supports Dr. Pickering's opinion, there is sufficient evidence in the record, including the other medical opinions, to support the ALJ's decision to give little or no weight to Dr. Pickering's opinion. The ALJ considered Dr. Pickering's opinion to be inconsistent with and not well-supported by the other evidence in the record. The ALJ also found Dr. Pickering's opinion less credible than the other medical opinions because of the lack of a bipolar diagnosis anywhere else in the record, and because his report seemed "client-driven."[6] Noting that Dr. Pickering reviewed the record evidence and examined S.E. significantly later than Dr. Wilson and the state agency consultants, Edwards argues that Dr. Pickering had records before him that were not available to the other medical experts, and by dismissing Dr. Pickering's opinion, the ALJ ignored relevant evidence. The ALJ stated that "evidence received into the record

---

[6]Edwards points to an indication of bipolar disorder in S.E.'s treatment notes from Volunteer Behavior Health Care as evidence that the ALJ was not justified in finding Dr. Pickering's report to be not credible. In that treatment note, dated October 20, 2009, Dorothy Burke, MSN APRN BC, stated that "I think this [client] is not only ADHD but bipolar as well." (R. 374.) This statement cannot be fairly read as a diagnosis, and thus the ALJ's statement regarding the lack of a bipolar diagnosis in the record is not inaccurate.

after the reconsideration determination (including the testimony at the hearing) also provides new and material information that could but does not particularly alter these state agency medical consultants' opinions about [S.E.'s] residual functional capacity." (R. 25.)   While this statement may not be the most satisfying treatment of the relevant evidence put into the record between the reconsideration stage and the time of Dr. Pickering's report, it is sufficient to show that the ALJ considered this evidence in weighing the opinions and in making his step-three determinations.[7] Accordingly, the ALJ did not err in assigning little or no weight to Dr. Pickering's opinion.

    2.   <u>Listing 112.11</u>

At the time of the ALJ's decision, Listing 112.11 for Attention Deficit Hyperactivity Disorder required medically documented findings of marked inattention, impulsiveness, and hyperactivity, as well as marked impairment in two of the following: age-appropriate cognitive/communicative function, age-appropriate social functioning, age-appropriate personal functioning, and difficulties in maintaining concentration.   <u>See</u> 20 C.F.R. § 404, subpt. P, app. 1, § 112.11.[8]   Edwards argues that Dr.

---

[7]As to Edwards's argument that Dr. Pickering is the "most qualified" examining source, specialization is one factor for the ALJ to consider in weighing medical opinions.  However, because Dr. Pickering was not a treating source, the ALJ was entitled to focus more on supportability, consistency, and credibility in weighing the opinion evidence.

[8]The SSA has recently revised the criteria in the listings used to evaluate claims involving mental disorders in adults and children

Pickering's opinion is sufficient evidence that S.E.'s impairment meets Listing 112.11, and the ALJ erred in rejecting it.  She also asserts that the ALJ erred in relying only on the opinions of the state agency consultants in making this finding.

At step three, "[a]n administrative law judge must compare the medical evidence with the requirements for listed impairments in considering whether the condition is equivalent in severity to the medical findings for any Listed Impairment."  Reynolds v. Comm'r of Soc. Sec., 424 F. App'x 411, 415 (6th Cir. 2011) (citing Lawson v. Comm'r of Soc. Sec., 192 F. App'x 521, 529 (6th Cir. 2006)).  The Reynolds court stated that the ALJ needs "to actually evaluate the evidence, compare it" to the relevant listings, and "give an explained conclusion, in order to facilitate meaningful judicial review."  Id. at 416.  However, it is the claimant's burden to establish that her impairment meets a listing, and if the claimant has not met that burden, then any error at step three is harmless.  See Forrest v. Comm'r of Soc. Sec., 591 F. App'x 359, 366 (6th Cir. 2014).

The ALJ stated that "[b]ased upon the uncontradicted and reasonable opinion of the state agency medical/psychological consultants, the claimant's impairments do not meet or medically equal any listed impairment."  (R. 22.)  The ALJ did not explicitly

---

under the Act.  See 81 FR 66138 (September 26, 2016).  The SSA indicated its expectation that "Federal courts will review [its] final decisions using the rules that were in effect at the time [it] issued the decisions."  Id. n.1.

mention any specific listings or criteria in making this determination. Moreover, although the state agency consultants stated their opinion that S.E. does not suffer from an impairment that meets any listing, and evaluated S.E. in terms of the six domains of functional equivalence, they also did not compare the evidence before them to the criteria of Listing 112.11 or any other listing. However, Edwards has not put forth sufficient evidence to show that S.E. meets Listing 112.11. Although Dr. Pickering opined that S.E.'s impairment met Listing 112.11, for the reasons stated above, the ALJ's decision to give great weight to the opinions of the state consultants and the opinion Dr. Wilson, and little or no weight to Dr. Pickering's opinion, is supported by substantial evidence. Edwards has not put forward other evidence establishing that S.E.'s impairments met that listing or any listing.[9] Therefore, even if the ALJ's explanation of why S.E.'s impairments do not meet the listings was insufficient, remand on this basis is not appropriate.

3.  <u>Edwards's Hearing Testimony</u>

Edwards also argues the ALJ failed to properly assess the credibility of her testimony on S.E.'s behalf at the hearing. While the ALJ must consider all of a claimant's symptoms, including pain, an individual's symptoms cannot establish that she is disabled unless the individual is found to have a medically

---

[9]Although Edwards argues that S.E. suffers from bipolar disorder and post-traumatic stress disorder, she does not argue that S.E's impairments met any listing besides 112.11.

determinable impairment which can reasonably be expected to produce
the symptoms.  20 C.F.R. § 416.929(a).  A symptom is a claimant's
own description of her physical or mental impairment.  However, if
a claimant is under the age of eighteen and "unable to adequately
describe [her] symptoms," the SSA "will accept as a statement of
[the] symptoms the description given by the person who is most
familiar with [her], such as a parent . . . ."  § 416.928(a).  "If
the ALJ finds that a claimant has 'a medically determinable
impairment [] that could reasonably be expected to produce [his or
her] symptoms . . . [the ALJ] must then evaluate the intensity and
persistence of [those] symptoms . . . [to] determine how [the]
symptoms limit'" the claimant's functioning.  See Keeton v. Comm'r
of Soc. Sec., 583 F. App'x 515, 531–32 (6th Cir. 2014) (quoting 20
C.F.R. § 416.929(c)(1) (alterations in original)).  The ALJ must
consider all relevant evidence, including objective medical
evidence, the individual's statements, and "other evidence such as
(1) the claimant's daily activities; (2) the location, duration,
frequency, and intensity of the claimant's pain or other symptoms;
(3) precipitating and aggravating factors; (4) '[t]he type, dosage,
effectiveness, and side effects of any medication;' (5) forms of
treatment other than medication that the claimant receives to
relieve his or her symptoms; and (6) other measures used to relieve
the pain."  Id. at 532 (quoting 20 C.F.R. §§ 404.1529(a) &
416.929(a)).

A child's symptoms "will be determined to diminish [her

functioning] to the extent that [her] alleged functional limitations and restrictions due to symptoms . . . can reasonably be accepted as consistent with the objective medical and other evidence." 20 C.F.R. § 416.929(c)(4). SSR 16-3P instructs the ALJ to "consider an individual's statements about the intensity persistence, and limiting effects of symptoms, and . . . evaluate whether the statements are consistent with the objective medical evidence and the other evidence." SSR 16-3P, 2016 WL 1119029, at *4 (March 16, 2016). If

> an individual's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and the other evidence of record, [the ALJ] will determine that the individual's symptoms are more likely to reduce . . . a child's ability to function independently, appropriately, and effectively in an age-appropriate manner . . . . In contrast, if an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, [the ALJ] will determine that the individual's symptoms are less likely to reduce his or her . . . abilities to function independently, appropriately, and effectively in an age-appropriate manner.

Id. at 7. In evaluating an individual's symptoms, it is not sufficient for [the ALJ] to make a "single, conclusory statement" that an individual's statements have been considered, or to "simply recite the factors described in the regulations for evaluating symptoms." Id. at 9. Rather, "[t]he determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any

subsequent reviewer can assess how the [ALJ] evaluated the individual's symptoms."[10]   Id.

In concluding that S.E. was not disabled the ALJ stated that he "considered the claimant's allegations and has found them generally not credible in light of the objective evidence."  (R. 25.)  The ALJ also characterized the hearing testimony as "new and material information" but concluded that it "does not particularly alter [the] state agency medical consultants' opinions about the claimant's residential functional capacity."  (Id.)

While the ALJ's opinion may not sufficiently articulate the specific reasons for the weight given to the hearing testimony in light of the record evidence, remand on this ground is not appropriate because to the extent the ALJ erred, this error was harmless.  See Ulman, 693 F.3d at 714 ("[H]armless error analysis applies to credibility determinations in the social security disability context.").  Even if the ALJ had fully credited Edwards's hearing testimony, his weighing of the opinion evidence and other evidence in the record would still sufficiently support the determination that S.E.'s impairments do not meet, medically

---

[10]The court notes that SSR 96-7P, which was rescinded by 16-3P, was in effect at the time of the ALJ's decision.  However, because SSR 16-3P clarifies, rather than changes, the SSA's regulatory policy as to symptom evaluation, SSR 16-3P applies to decisions of the Commissioner rendered before it was issued.  See Patterson v. Colvin, No. 13-CV-1040-JDB-TMP, 2016 WL 7670058, at *6-9 (W.D. Tenn. Dec. 16, 2016), report and recommendation adopted, 2017 WL 95462 (W.D. Tenn. Jan. 10, 2017).  The court notes that the analysis under SSR 96-7P would be substantively the same as the analysis under SSR 16-3P.

equal, or functionally equal the listings.  Accordingly, even if the ALJ fell short of the analysis required by the regulations and SSR 16-3P, the decision must be affirmed.

### 4.   Substantial Evidence

For the same reasons described above, the ALJ's determination that S.E. is not disabled within the meaning of the Act is supported by substantial evidence.  This decision is within the ALJ's zone of choice, and therefore must be affirmed even if there is evidence in the record that would support a different decision. The record does contain some evidence of suicidal and violent communications on the part of S.E., as well as some evidence that S.E. suffered abuse by her father and was scared of gang violence connected to her brother and the neighborhoods in which she lived.[11] While the court recognizes the concerning nature of this evidence, the court does not have the authority to reweigh the evidence before the ALJ.  Because substantial evidence supports the decision and the ALJ did not commit prejudicial error, the decision must be affirmed.

### III.   RECOMMENDATION

For the reasons described above, it is recommended that the Commissioner's decision be affirmed.

Respectfully submitted,

---

[11]Neither Dr. Wilson nor Dr. Pickering mention or discuss abuse. Dr. Wilson noted "no indication of suicidal or homicidal ideation, plan, or intent," while Dr. Pickering notes "suicidal ideation with gesture and aggressiveness towards others."  (R. 207, 394.)

s/ Tu M. Pham
TU M. PHAM
United States Magistrate Judge

April 6, 2017
Date

**NOTICE**

**WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT AND RECOMMENDED DISPOSITION, ANY PARTY MAY SERVE AND FILE SPECIFIC WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS. ANY PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(2); L.R. 72.1(g)(2). FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.**